THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v. MICHAEL SCHRADER, Petitioner-Appellant.

First District (3rd Division)   No. 1—02—1565

Opinion filed September 30, 2004.—Modified on denial of rehearing December 8, 2004.

Michael J. Pelletier and Robert Hirschhorn, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Alan J. Spellberg, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Petitioner, Michael Schrader, appeals from the circuit court's denial of his *pro se* petition for relief from judgment filed pursuant to section 2—1401 of the Illinois Code of Civil Procedure (735 ILCS 5/2—1401 (West 2002)) (section 2—1401). On appeal, petitioner contends that (1) the court was without authority to summarily dismiss his section 2—1401 petition, (2) his extended-term sentence of 70 years for murder based on his "brutal or heinous" conduct is unconstitutional, and (3) his convictions for armed robbery and armed violence are prohibited by the one-act, one-crime doctrine. This court affirmed the circuit court's denial in a Rule 23 (166 Ill. 2d R. 23) disposition, now withdrawn by separate order. The original issues petitioner raised on appeal, and those additionally set forth in his petition for rehearing, will be addressed in this opinion.

Following a jury trial in 1983, petitioner was convicted of murder, armed robbery, and armed violence for his involvement in a 1982 store robbery. He was found eligible for the death penalty but was sentenced to an extended prison term of 70 years for murder and to two concurrent 30-year terms for armed robbery and armed violence. No direct appeal was taken.

Petitioner filed his initial postconviction petition in 1993, in which he alleged his trial counsel was ineffective for failing to perfect his direct appeal. The circuit court summarily dismissed the petition, finding petitioner elected to pursue a clemency petition in lieu of a direct appeal. The Cook County public defender's office filed a motion pursuant to *Pennsylvania v. Finley*, 481 U.S. 551, 555, 95 L. Ed. 2d 539, 546, 107 S. Ct. 1990, 1993 (1987), which the appellate court

granted, affirming the circuit court's first-stage summary dismissal. *People v. Schrader*, No. 1—93—2255 (1994) (unpublished order under Supreme Court Rule 23).

In September of 2000, petitioner filed a second, successive post-conviction petition, alleging only that his extended-term sentence was in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000) (*Apprendi*). In November of 2000, the circuit court summarily dismissed the petition without prejudice, expressly permitting petitioner to refile his petition in the event *Apprendi* were to become applicable to successive postconviction petitions. Petitioner sought leave to file a late notice of appeal, which the circuit court denied.

Petitioner filed the instant section 2—1401 petition for relief from judgment in March of 2002, again arguing that his extended-term sentence, based upon the brutal or heinous behavior, was imposed in contravention of *Apprendi*. On April 23, 2002, the circuit court summarily dismissed the petition, finding it was barred by the statute of limitations and by nonconformity with the pleading requirements of section 2—1401. Petitioner timely appeals.

## I

Petitioner initially contends the circuit court lacked the statutory authority to summarily dismiss his section 2—1401 petition. Section 2—1401 provides a comprehensive statutory procedure by which final orders, judgments, and decrees may be challenged more than 30 days after their entry. *People v. Pinkonsly*, 207 Ill. 2d 555, 562, 802 N.E.2d 236 (2003). Section 2—1401 provides remedial powers to criminal cases. *People v. Harvey*, 196 Ill. 2d 444, 447, 753 N.E.2d 293 (2001). A section 2—1401 petition requires the circuit court to determine whether facts exist that were unknown to the court at the time of trial and would have prevented entry of the judgment. *Pinkonsly*, 207 Ill. 2d at 566. The dismissal of a section 2—1401 petition is reviewed under an abuse of discretion standard. *Pinkonsly*, 207 Ill. 2d at 562.

As recognized recently by the First District Appellate Court in *People v. Taylor*, 349 Ill. App. 3d 718, 719, 812 N.E.2d 581 (2004) (*Taylor*), there is "a dispute among the districts of this court concerning whether a [circuit] court may summarily dismiss *** defendant's section 2—1401 petition *sua sponte*." The Second District Appellate Court has held that a circuit court commits reversible error by dismissing a section 2—1401 petition without giving petitioner notice and an opportunity to respond to the dismissal, and a reviewing court may not look beyond this error to assess the merits of the petition. See *People v. Mescall*, 347 Ill. App. 3d 995, 808 N.E.2d 1101 (2d Dist.

2004); *People v. Pearson*, 345 Ill. App. 3d 191, 802 N.E.2d 386 (2d Dist. 2003), *appeal allowed*, 208 Ill. 2d 549 (2004) (*Pearson*); *People v. Gaines*, 335 Ill. App. 3d 292, 295-97, 780 N.E.2d 822 (2d Dist. 2002); see also *People v. Winfrey*, 347 Ill. App. 3d 987, 988-91, 808 N.E.2d 589 (2d Dist. 2004) (summary dismissal of *habeas corpus* petition improper); *People v. Shellstrom*, 345 Ill. App. 3d 175, 176-79, 802 N.E.2d 381 (2nd Dist. 2003), *appeal allowed*, 208 Ill. 2d 552 (2004) (summary dismissal of *mandamus* petition improper).

In contrast, the Fourth District has reached the opposite conclusion, holding that a circuit court possesses the inherent authority to strike a section 2—1401 petition *sua sponte* if it finds the petition to be frivolous and without merit. See *People v. Bramlett*, 347 Ill. App. 3d 468, 472-73, 806 N.E.2d 1251 (4th Dist. 2004); see also *Mason v. Snyder*, 332 Ill. App. 3d 834, 839-43, 774 N.E.2d 457 (4th Dist. 2002) (summary dismissal of *mandamus* petition proper).

In *Taylor*, 349 Ill. App. 3d at 720, the First District expressly declined to follow the Second District's holding in *Pearson*, where the court rejected the State's argument that the summary dismissal could be affirmed on grounds that the petition lacked merit and defendant sustained no prejudice. The *Pearson* court reasoned that the "proceedings by which defendant's petition was dismissed were too far removed from those to which he was entitled for us to hold that he suffered no prejudice." *Pearson*, 345 Ill. App. 3d at 195. In *Taylor*, however, the court decided that it "may look beyond any alleged procedural defect where *** defendant's petition raised a pure question of law, was frivolous and completely without merit and no prejudice resulted from the [circuit] court's dismissal." *Taylor*, 349 Ill. App. 3d at 720; see also *Owens v. Snyder*, 349 Ill. App. 3d 35, 811 N.E.2d 738 (2004) (summary dismissal of *mandamus* petition proper where found to be frivolous and no prejudice incurred by defendant).

In the case *sub judice*, the relevant holdings and reasoning of the First and Fourth District cases will be applied. Petitioner's section 2—1401 petition raised only a pure question of law—whether his extended-term sentence was in violation of *Apprendi*. At the time of the summary dismissal, on April 23, 2002, *People v. De La Paz*, 204 Ill. 2d 426, 439, 791 N.E.2d 489 (2003) (*De La Paz*), was the controlling and dispositive authority on this issue. *De La Paz* held that *Apprendi* does not apply retroactively to cases on collateral review. *De La Paz*, 204 Ill. 2d at 439. Therefore, the circuit court applied the law properly in reaching its conclusion that petitioner's *Apprendi* challenge was frivolous and without merit. "[E]ven if [petitioner] had been given notice and an opportunity to be heard before the court dismissed his petition, he could not have cured its inherent defects" because he

could not allege "any facts in his petition that would circumvent *De La Paz* and make his extended-term sentence subject to *Apprendi*." *Taylor*, 349 Ill. App. 3d at 721.

On the same day *Taylor* was decided, the United States Supreme Court decided *Schriro v. Summerlin*, 542 U.S. 348, 159 L. Ed. 2d 442, 124 S. Ct. 2519 (2004) (*Schriro*), and *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403, 124 S. Ct. 2531 (2004) (*Blakely*). In his petition for rehearing, petitioner relies on both *Schriro* and *Blakely*, maintaining that his extended-term sentence is unconstitutional. As these cases concern the constitutionality of sentencing enhancements, they create an additional component to petitioner's specific challenge, thereby differentiating the instant case from *Taylor* despite the indistinguishable nature of the claims. Part II of this opinion addresses petitioner's sentencing challenge in light of these decisions.

## II

The indictment in this case charged petitioner with three counts of first degree murder, making no mention of his "brutal or heinous" behavior. The jury found petitioner guilty of murder. Petitioner waived his right to a jury for purposes of the death penalty hearing. The judge found petitioner death eligible since he was older than 18 years of age and the murder occurred during the commission of another felony—armed robbery. Nonetheless, the court elected not to impose the death penalty, but found his behavior to be "brutal or heinous," thereby authorizing the imposition of an extended-term sentence. Under the statutory guidelines in place at the time of petitioner's sentencing, the term of imprisonment for first degree murder was 20 to 40 years' imprisonment (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)(a)); however, since the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)), the circuit court was authorized to impose an extended-term sentence within the range of 40 to 80 years. Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2. Petitioner was sentenced to 70 years.

Petitioner insists that the extended-term portion of his sentence, that which is in excess of the statutory maximum of 40 years, must be vacated since this "enhanced" offense was not charged in the indictment, nor proved beyond a reasonable doubt.

## A

Petitioner's initial argument is premised on *Ring v. Arizona*, 536 U.S. 584, 153 L. Ed. 2d 556, 122 S. Ct. 2428 (2002) (*Ring*), where the United States Supreme Court applied the principle set forth in *Apprendi* to a death sentence imposed under the Arizona sentencing

scheme. Arizona allowed judges to impose a sentence of death whether or not a jury had agreed to impose death, if the judge found the existence of an aggravating factor beyond a reasonable doubt. *Ring*, 536 U.S. at 592-93, 153 L. Ed. 2d at 566, 122 S. Ct. at 2434-35. The Supreme Court held that because Arizona's law authorized the death penalty only if an aggravating factor was present, *Apprendi* required the existence of such a factor to be proved to a jury rather than to a judge, in those cases in which defendant chose to have a jury decide his case. *Ring*, 536 U.S. at 603-09, 153 L. Ed. 2d at 573-77, 122 S. Ct. at 2440-43.

In both his original and reply briefs, petitioner argued, based on the Ninth Circuit's holding in *Summerlin v. Stewart*, 341 F.3d 1082 (9th Cir. 2003) (*Summerlin*), that *Ring* embodied a substantive change in the law and was to be applied retroactively. Since the filing of petitioner's reply brief, however, the Supreme Court overturned *Summerlin*, holding that "*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review." *Schriro*, 542 U.S. at 358, 159 L. Ed. 2d at 453, 124 S. Ct. at 2526. In his petition for rehearing, petitioner insists that when the retroactivity analysis of *Schriro* is applied to Illinois law, as opposed to Arizona law, *Ring* must be construed to apply retroactively.

Petitioner acknowledges that in *De La Paz*, our supreme court held that *Apprendi* was not to be applied retroactively to cases on collateral review, yet he maintains that his sentencing challenge is not based on *Apprendi*, but on *Ring*. Petitioner, however, fails to explain adequately why *Ring*, which merely applies the rule of *Apprendi*, should be taken outside the ambit of *De La Paz*.[1] Although framed under *Ring*, petitioner's sentencing challenge is indistinguishable from a direct *Apprendi* challenge; "defendant raising an *Apprendi* claim on appeal is simply complaining that he received a sentence in excess of the normal sentencing range, without the fact or facts necessary to permit such sentence having been proven to a jury beyond a

---

[1]Petitioner states that he "is not asserting an *Apprendi* claim that the 'brutal and heinous' enhancing factor must be proven to the jury beyond a reasonable doubt; to the contrary, he asserts that even if it had been proven at trial beyond a reasonable doubt, an extended-term sentence based thereupon could not stand because it represents an offense for which he was not charged, and thus cannot be sentenced." *Ring*, however, did not address the sufficiency of an indictment, thereby making petitioner's attempt to have this nuance differentiate his *Ring* argument from an *Apprendi* argument unavailing. Petitioner's argument also is not supported by *Ring* to the extent that petitioner here was not sentenced to death as was defendant in *Ring*.

reasonable doubt." *De La Paz*, 204 Ill. 2d at 437. This is precisely petitioner's argument here under *Ring*.

Under *Apprendi*, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. Almost interchangeably, under *Ring*, "[c]apital defendants, no less than noncapital defendants *** are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Ring*, 536 U.S. at 589, 153 L. Ed. 2d at 564, 122 S. Ct. at 2432. Or stated otherwise, where defendant elects for a jury trial, a sentencing judge, sitting without a jury, may not find an aggravating circumstance necessary for imposition of the death penalty. *Ring*, 536 U.S. at 589, 153 L. Ed. 2d at 564, 122 S. Ct. at 2432. In Illinois, under either *Apprendi* or *Ring*, a jury must find any fact, including aggravating factors, beyond a reasonable doubt before the circuit court may impose a sentence beyond the statutory maximum. Therefore, the issue of whether *Ring* is retroactive in Illinois is governed by the same analysis as that which has been conducted with respect to *Apprendi*.

In *De La Paz*, the Illinois Supreme Court employed the retroactivity test from *Teague v. Lane*, 489 U.S. 288, 307, 103 L. Ed. 2d 334, 353, 109 S. Ct. 1060, 1073 (1989), and held that *Apprendi* is not retroactive. *De La Paz*, 204 Ill. 2d at 433-34, 438-39.[2] Analogously, in *Schriro*, the United States Supreme Court applied the *Teague* retroactivity test and held, without qualification, that *Ring* was neither a substantive rule warranting application to cases on collateral review, nor was it a watershed procedural rule worthy of the same. *Schriro*, 542 U.S. at 354-58, 159 L. Ed. 2d at 450-52, 124 S. Ct. at 2524-26.

In advancing his position, petitioner posits that *People v. Swift*, 202 Ill. 2d 378, 781 N.E.2d 292 (2002), set forth three different substantive offenses of murder in Illinois: (1) murder *simpliciter* (20 to 40 years in 1982); (2) capital murder (death or life imprisonment); and (3) enhanced murder (extended-term sentencing), which es-

---

[2]Petitioner argues that when *Ring* is applied to Illinois' homicide statute, as opposed to Arizona's statute, it not only requires a jury to find the existence of an aggravating factor, but additionally imposes the requirement that the finding be made beyond a reasonable doubt. The same, however, remains true upon application of *Apprendi* to Illinois' homicide statute, which requires that the finding be made both by a jury and beyond a reasonable doubt. Petitioner's *Ring* argument is no different than a challenge under *Apprendi*.

sentially is murder *simpliciter* accompanied by an aggravating factor, such as "brutal or heinous" behavior. Under his reading of *Swift*, petitioner asserts that when applying *Ring* to the Illinois murder statute, the result is an increase in the number of elements of the offense. He contends that the aggravating factors (*i.e.*, "brutal or heinous") are, in fact, additional factual elements of "enhanced" murder. Quoting *Schriro*, 542 U.S. at 354, 159 L. Ed. 2d at 450, 124 S. Ct. at 2524, petitioner reasons that since "[a] decision that modifies the elements of an offense is normally substantive rather than procedural," *Ring*, which modifies the elements of murder in Illinois, also must be substantive and, therefore, retroactive.

Despite petitioner's assertions to the contrary, the supreme court in *Swift* did not create two elevated forms of murder, nor did it alter the range of conduct prohibited by, and delineated in, Illinois' homicide statute (720 ILCS 5/9—1(a) (West 2000)). "Aggravating factors are not elements of the offense of murder. They are sentencing factors." *People v. Davis*, 205 Ill. 2d 349, 378, 793 N.E.2d 552 (2002). *Swift* merely clarified the *Apprendi*-compliant requirements for sentencing purposes.[3] Further compelling evidence that *Swift* did not have the effect petitioner suggests is found in the legislature's response to *Apprendi*,

---

[3]The court in *People v. Swift*, 202 Ill. 2d 378, 388, 781 N.E.2d 292 (2002), stated:

> "In essence, the State contends that Illinois has a 'unitary' sentencing scheme for first degree murder. The State urges us to read all of the statutes as a whole and conclude that any sentence the legislature has authorized to be imposed on a defendant convicted of first degree murder is part of the sentencing range.
>
> We reject this argument. A defendant commits first degree murder when he kills an individual, intending or knowing that he is likely to cause death or great bodily harm, or when he commits the killing in the attempt or commission of a felony other than second degree murder. See 720 ILCS 5/9—1(a) (West 1998). See also Illinois Pattern Jury Instructions, Criminal, No. 7.02 (4th ed. 2000). According to the plain language of the statutes we set out above, if only these facts are proven, the sentence imposed must be between 20 and 60 years' imprisonment. See 730 ILCS 5/5—8—1(a)(1)(a) (West 1998). For any other sentence to be imposed, be it an extended-term sentence of 60 to 100 years (730 ILCS 5/5—8—2(a)(1) (West 1998)), life imprisonment (730 ILCS 5/5—8—1(a)(1)(b), (a)(1)(c) (West 1998)), or the death penalty (720 ILCS 5/9—1(g), (h) (West 1998)), additional facts must be proven. Thus, according to the plain language of the statutes, 20 to 60 years' imprisonment is the sentencing range for first degree murder. This is the only range of sentence authorized for the basic elements of the crime."

as manifested in amendments to both the extended-term statute[4] (730 ILCS 5/5—8(2)(a) (West 2002)) (section 5—8—2) and the statute involving the form of criminal charges[5] (725 ILCS 5/111—3(c—5) (West 2002)) (section 111—3(c—5). "The rule stated in *Apprendi*, and correspondingly in *Ring*, which is reflected in section 111—3(c—5), is a new procedural rule and not one of substance and, therefore, does not create an element of the offense of first-degree murder." *People v. Crutchfield*, 353 Ill. App. 3d 1014, 1024 (2004); see also *People v. Jett*, 341 Ill. App. 3d 200, 203, 793 N.E.2d 214 (2003) (inclusion of "brutal or heinous" factor in indictment did not alter elements of first degree murder). "The amendments [in sections 111—3 and 5—8—2] clearly did not alter legal rules to make convictions easier, nor did they increase the punishment for a previously committed offense or make any changes to the elements of the offense of murder. The only change made is that the finder of fact must determine the existence of the relevant aggravating factor beyond a reasonable doubt, thereby increasing the burden required of the State." *People v. O'Quinn*, 339 Ill. App. 3d 347, 362-63, 791 N.E.2d 1066 (2003). Therefore, *Ring*, like *Apprendi*, which requires proof of an aggravating factor to a jury

---

[4]Effective June 27, 2002, section 5—8—2 of the Unified Code of Corrections, governing "extended term" sentences, provides that "(a) A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5—8—1 [730 ILCS 5/5—8—1] for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 [730 ILCS 5/5—5—3.2] were found to be present. If the pre-trial and trial proceedings were conducted in compliance with subsection (c—5) of Section 111—3 of the Code of Criminal Procedure of 1963 [725 ILCS 5/111—3], the judge may sentence an offender to the following: (1) for first degree murder, a term shall be not less than 60 years and not more than 100 years ***." 730 ILCS 5/5—8—2 (West 2002).

[5]Effective February 23, 2001, section 111—3(c—5), governing the "form of charges," provides that "in all cases in which the imposition of the death penalty is not a possibility, if an alleged fact (other than the fact of a prior conviction) is not an element of an offense but is sought to be used to increase the range of penalties for the offense beyond the statutory maximum that could otherwise be imposed for the offense, the alleged fact must be included in the charging instrument or otherwise provided to the defendant through a written notification before trial, submitted to a trier of fact as an aggravating factor, and proved beyond a reasonable doubt. Failure to prove the fact beyond a reasonable doubt is not a bar to a conviction for commission of the offense, but is a bar to increasing, based on that fact, the range of penalties for the offense beyond the statutory maximum that could otherwise be imposed for that offense." 725 ILCS 5/111—3(c—5) (West 2002).

beyond a reasonable doubt, does not embody a substantive rule to be applied retroactively.

Alternatively, petitioner contends *Ring* is a watershed rule of criminal procedure, warranting retroactive application under Illinois law. Petitioner acknowledges that the *Schriro* Court found it implausible that the finding of aggravating factors by a judge, rather than by a jury, so seriously diminishes accuracy as to produce an impermissibly large risk of injustice. *Schriro*, 542 U.S. at 355-56, 159 L. Ed. 2d at 451, 124 S. Ct. at 2525. He nonetheless argues that the *Schriro* Court only was able to reach this conclusion because Arizona's homicide statute already required proof beyond a reasonable doubt for its aggravating factors, so the net effect of *Ring* in Arizona merely was to "alter the procedural matrix" by having a jury, rather than a judge, make certain factual determinations.

In Illinois, he contends, the change would be not only fact-finding by a jury, but an increase in the quantum of proof from that of a mere preponderance of evidence to proof beyond a reasonable doubt. Such a modification, he maintains, would so seriously diminish accuracy as to produce an impermissibly large risk of injustice.

As noted previously, our supreme court has examined *Ring*'s implications under Illinois law in the context of *Apprendi*, which imposes the same constitutional requirements on sentencing factors as *Ring*, and "decline[d] to hold that an *Apprendi* violation comprises such constitutional 'bedrock' as to require retroactive application, when such error is potentially harmless." *De La Paz*, 204 Ill. 2d at 437. Our supreme court also has examined, and approved of, Illinois' sentencing procedure in light of *Ring* specifically. *People v. Ballard*, 206 Ill. 2d 151, 202-05, 794 N.E.2d 788 (2002). The court found that "[t]he second stage of Illinois capital sentencing proceedings clearly bears a marked resemblance to the balancing of factors in which [circuit] courts traditionally engage in determining what sentence to impose within a statutory range, a practice of which *Apprendi* explicitly approved." *Ballard*, 206 Ill. 2d at 204. Therefore, a comparison between the underlying Arizona and Illinois homicide statutes under *Ring* does not yield a different conclusion than the supreme court reached in *De La Paz*. Accordingly, petitioner's attempt to have this court apply *Ring* retroactively and depart from *Schriro* is rejected.

Irrespective of the foregoing, petitioner's claim is without merit. Prior to being sentenced to an extended term of imprisonment, petitioner was found death eligible by the circuit court after waiving a jury at his death penalty hearing. In such circumstances, petitioner may not claim successfully that the extended-term portion of his

sentence is improper, since "our supreme court has held the imposition of an extended-term sentence, after \*\*\* defendant has been found death eligible, does not violate *Apprendi.*" *People v. Anderson*, 352 Ill. App. 3d 934, 936-37 (2004), citing *People v. Ford*, 198 Ill. 2d 68, 73-75, 761 N.E.2d 735 (2001) *(Ford)*. Based exclusively upon facts proved beyond a reasonable doubt,[6] petitioner faced a prescribed statutory maximum of death. The sentence actually imposed—70 years in prison—does not exceed this maximum. See *Ford*, 198 Ill. 2d at 74. The maximum sentence facing defendant (*i.e.,* death) was established when the circuit court found, by proof beyond a reasonable doubt, that the murder was committed in the course of another felony—armed robbery. The "court's subsequent finding that the murder 'was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty' did nothing to increase the penalty that defendant was facing. Rather, it simply guided the [circuit] court in fashioning an appropriate sentence that was both specifically authorized by statute and below the prescribed statutory maximum. This is precisely the type of judicial fact finding that *Apprendi* permits." *Ford*, 198 Ill. 2d at 74-75.

Petitioner's challenge to the sufficiency of the indictment, for its failure to charge him with "brutal or heinous" conduct, also is unavailing. Our supreme court has held that the due process clause of the fourteenth amendment, upon which *Apprendi* was entirely based, does not require notice of sentence-enhancing facts. *Ford*, 198 Ill. 2d at 72 n.1; *People v. Thurow*, 203 Ill. 2d 352, 366-67, 786 N.E.2d 1019 (2003). Under *Ring*, "the fifth amendment does not necessitate that aggravating factors, even if they are the equivalent of the elements of an offense, be pled in a state-court indictment." *People v. McClain*, 343 Ill. App. 3d 1122, 1139, 799 N.E.2d 322 (2003). Rather, " '[t]he only possible constitutional implication that *Ring* and *Apprendi* may have in relation to our capital defendants is that they must receive reasonable

---

[6]The circuit court necessarily found the death-eligible factor of felony murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)) beyond a reasonable doubt, even though the finding was made by the court and not a jury. See Ill. Rev. Stat. 1981, ch. 38, par. 9—1(d)(3). Under section 9—1(f) (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(f)), "[t]he burden of proof of establishing the existence of any of the factors set forth in subsection (b) is on the State and shall not be satisfied unless established beyond a reasonable doubt." See also *People v. Ford*, 198 Ill. 2d 68, 77, 761 N.E.2d 735 (2001) (Harrison, J., dissenting) (defendant "cannot complain that the standard of proof was too lax because under section 9—1(f) of the Criminal Code of 1961 (720 ILCS 5/9—1(f) (West 1998)), the death-eligibility factors must be proven beyond a reasonable doubt even where the proceedings are before the court sitting without a jury").

notice of aggravating circumstances, pursuant to the [s]ixth [a]mendment's notice requirement,' [citation]" under which, state criminal "defendants have a right to 'reasonable notice' so as to guarantee that they are afforded an opportunity to defend against the charges." *McClain*, 343 Ill. App. 3d at 1138, 1139.

When a charging instrument is attacked for the first time on appeal, it is sufficient that it " ' "apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same" ' " (*Davis*, 205 Ill. 2d at 375-76, quoting *People v. Thingvold*, 145 Ill. 2d 441, 448 (1991), quoting *People v. Gilmore*, 63 Ill. 2d 23, 29 (1976)); however, *Apprendi* does not afford relief on the basis of a deficient charging instrument unless defendant can demonstrate how he was prejudiced. *People v. Davis*, 352 Ill. App. 3d 570, 575 (2004).

Here, petitioner makes no claim of prejudice, nor does the record reveal that the deficiency in the indictment caused him any prejudice. Petitioner was aware of the precise offense charged with sufficient specificity to prepare his defense, and he may assert his conviction as a bar to future prosecution arising out of the same. Petitioner was aware that he could receive a death sentence based on the commission of the murder during the commission of the armed robbery. Petitioner then received a lesser sentence based on the circumstances of the murder, of which he was aware. Absent any showing of prejudice, petitioner is not entitled to relief on this basis.

### B

■ Also raised in his petition for rehearing is petitioner's sentencing challenge premised on *Blakely*, under which the standard statutory maximum "is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (Emphasis omitted.) *Blakely*, 542 U.S. at 303, 159 L. Ed. 2d at 413, 124 S. Ct. at 2537. "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' [citation] and the judge exceeds his proper authority." (Emphasis omitted.) *Blakely*, 542 U.S. at 303-04, 159 L. Ed. 2d at 413-14, 124 S. Ct. at 2537.

Although *Blakely* potentially "calls into doubt the constitutionality of such enhancements" (*United States v. Ward*, 377 F.3d 671, 678 (7th Cir. 2004)), "[t]he Supreme Court has not made the *Blakely* rule

applicable to cases on collateral review." *Simpson v. United States*, 376 F.3d 679, 681 (7th Cir. 2004). "*Blakely* itself did not announce that it was applicable retroactively—and indeed the same-day decision in *Schriro* [citation] teaches the strong unlikelihood that *Blakely* will hereafter be given retroactive effect." *United States v. Traeger*, 325 F. Supp. 2d 860, 864 (N.D. Ill. 2004); see also *United States v. Malone*, No. 04 C 50327 (N.D. Ill. August 3, 2004); *United States v. Lowe*, No. 04 C 50019 (N.D. Ill. August 5, 2004). Absent any binding authority compelling the retroactive application of *Blakely* to cases on collateral review, petitioner's request that this court do so here is declined. This conclusion takes into consideration our supreme court's ruling, under analogous circumstances, in *De La Paz*, where the court rejected the retroactive application of *Apprendi*.

## III

Petitioner's remaining claim on appeal is that the circuit court's entry of convictions for both armed robbery and armed violence are forbidden by the one-act, one-crime doctrine. Notably, petitioner failed to raise this issue in his section 2—1401 petition before the circuit court, and it is now being raised for the first time in this appeal. Recently, the supreme court held that "an alleged one-act, one-crime violation and the potential for a surplus conviction and sentence affects the integrity of the judicial process, thus satisfying the second prong of the plain error rule," which allows the review of a waived error if either of the two prongs is satisfied. *People v. Harvey*, 211 Ill. 2d 368, 389, 813 N.E.2d 181 (2004). A reviewing court may invoke the plain error rule to review alleged errors not properly preserved when (1) the evidence in a criminal case is closely balanced or (2) the error is so fundamental and of such magnitude that the accused is denied the right to a fair trial and remedying the error is necessary to preserve the integrity of the judicial process. *People v. Lindsey*, 201 Ill. 2d 45, 54, 772 N.E.2d 1268 (2002); 134 Ill. 2d R. 615(a). Since the second prong of the plain error rule is satisfied, petitioner's argument will be addressed on its merits. See *Harvey*, 211 Ill. 2d at 389.

In this case, petitioner and another man burst into a store. Petitioner, who was armed with a shotgun, fired at and killed Wanda Ortiz. The men then announced a "stick-up" and told everyone to lie down on the floor. Petitioner put his foot on the back of the store's owner, Yung Joo, as the other man went to the cash register and grabbed Joo's wife, ordering her to give him money and food stamps from the register. When Joo lifted up his head, petitioner stomped on Joo's back with his foot, forcing his face to the floor, injuring his eyes and lacerating his nose.

Petitioner was charged with, and the jury instructed on, armed robbery in that (1) petitioner took currency and food stamps from Joo, that (2) he did so by the use of force or by threatening the imminent use of force, and (3) was armed with a dangerous weapon. Petitioner also was charged with, and the jury instructed on, armed violence in that he, (1) while armed with a dangerous weapon, (2) committed the felony of aggravated battery by committing a battery on Joo in that he intentionally and knowingly, without legal justification, caused great bodily harm to Joo by kicking him about the body.

In *People v. King*, 66 Ill. 2d 551, 363 N.E.2d 838 (1977), the Illinois Supreme Court held that a defendant may not be convicted of multiple offenses when those offenses all are based on precisely the same physical act. *King*, 66 Ill. 2d at 566. This holding was reaffirmed and clarified in *People v. Rodriguez*, 169 Ill. 2d 183, 661 N.E.2d 305 (1996), where it was noted that an analysis under *King* requires a two-step examination. *Rodriguez*, 169 Ill. 2d at 186. First, a court must ascertain whether defendant's conduct consisted of a single physical act or separate acts; "[m]ultiple convictions are improper if they are based on precisely the same physical act." *Rodriguez*, 169 Ill. 2d at 186. An "act" is defined as "any overt or outward manifestation which will support a different offense." *King*, 66 Ill. 2d at 566. If defendant committed multiple acts, the court then proceeds to the second step to determine whether any of the other offenses are lesser-included offenses; if they are, multiple convictions are improper; however, if they are not, multiple convictions may be entered properly. *Rodriguez*, 169 Ill. 2d at 186.

Armed robbery is the commission of robbery while armed with a dangerous weapon. Ill. Rev. Stat. 1981, ch. 38, par. 18—2. Robbery is the taking of property from the person or presence of another by the use of force or by threatening the imminent use of force. Ill. Rev. Stat. 1981, ch. 38, par. 18—1. A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois law. Ill. Rev. Stat. 1981, ch. 38, par. 33A—2. A person commits aggravated battery, a felony, when, in committing a battery, he intentionally or knowingly causes great bodily harm or permanent disability or disfigurement. Ill. Rev. Stat. 1981, ch. 38, par. 12—4(a).

The primary inquiry is whether there are separate acts. The indictment must indicate that the State intends to treat defendant's conduct as separate acts. See *People v. Crespo*, 203 Ill. 2d 335, 342, 345, 788 N.E.2d 1117 (2001). In *Crespo*, defendant stabbed the victim three times, but the State did not differentiate between the acts in the charging instrument. The State argued, for the first time on appeal, that each stab was a separate act. The supreme court noted that each

stab "could have" supported a separate charge and the State "could have argued the case to the jury that way" but chose not to do so. (Emphasis omitted.) *Crespo*, 203 Ill. 2d at 344. The court found that to apportion the crimes among the three stabs for the first time on appeal would be unfair and concluded that multiple convictions could not be sustained. *Crespo*, 203 Ill. 2d at 343, 345.

In *Rodriguez*, the supreme court emphasized that a person can be guilty of two offenses when a common act is part of both offenses. *Rodriguez*, 169 Ill. 2d at 188. There, defendant was charged with the offenses of aggravated criminal sexual assault and home invasion. The aggravated criminal sexual assault count alleged that defendant committed an act of sexual penetration and displayed, or threatened the victim with, a gun. The home invasion count alleged that defendant unlawfully entered the victim's dwelling and threatened her with imminent use of force while armed with a gun. The court found that although these offenses shared in common the act of defendant threatening the victim with a gun, the offenses were predicated on separate physical acts. As long as there are multiple acts, as defined in *King*, their interrelationship does not preclude multiple convictions. *Rodriguez*, 169 Ill. 2d at 189.

■ Here, petitioner's actions satisfy the elements of armed robbery; he threatened force and took the property of another while armed with a dangerous weapon when he entered the store armed with a shotgun, announced a "stick-up," and took money and food stamps from Joo's cash register. Other, different acts by petitioner satisfy the elements of armed violence; he committed a felony, aggravated battery, while armed with a dangerous weapon when he kicked Joo in the back while holding a shotgun. In this way, petitioner committed two separate and distinct acts. Although the two offenses have in common the act of petitioner wielding a gun, as long as there are multiple acts, their interrelationship does not preclude multiple convictions. *Rodriguez*, 169 Ill. 2d at 189. The fact that the armed violence occurred during the armed robbery also is inconsequential, since "[t]wo separate acts do not become one solely because of proximity in time." *People v. Pearson*, 331 Ill. App. 3d 312, 322, 770 N.E.2d 1183 (2002) (*Pearson*), citing *People v. Myers*, 85 Ill. 2d 281, 287-88, 426 N.E.2d 535 (1981).

Having found the existence of multiple acts, the question becomes whether either offense is a lesser-included offense of the other. It should be noted that it is impermissible to base a conviction for armed violence on armed robbery (*People v. Cummings*, 351 Ill. App. 3d 343, 349, 813 N.E.2d 1004 (2004) (*Cummings*)); however, that impropriety is not present in the case at bar since petitioner's conviction for armed

violence was predicated on aggravated battery, not armed robbery. To qualify as an included offense, the instrument charging the greater offense must, at a minimum, set out the main outline of the lesser offense. *People v. McLaurin*, 184 Ill. 2d 58, 104-05, 703 N.E.2d 11 (1998); *People v. Kolton*, 347 Ill. App. 3d 142, 149, 806 N.E.2d 1175 (2004).

The indictment here charged petitioner with armed robbery "in that he, by the use of force and by threatening the imminent use of force while armed with a dangerous weapon, took United States currency from the person and presence of Yung Joo." This charge does not include an essential element of armed violence, *i.e.*, the commission of any felony defined by Illinois law except armed robbery. Ill. Rev. Stat. 1981, ch. 38, par. 33A—2; *Cummings*, 351 Ill. App. 3d at 349. The indictment also charged petitioner with armed violence "in that he, while armed with a dangerous weapon, to wit: a gun, committed a felony defined by Illinois Law, to wit: aggravated battery, in that he, in committing a battery on Yung Joo, intentionally and knowingly without legal justification caused great bodily harm to said Yung Joo by kicking him about the body with his feet." This charge does not include an essential element of armed robbery, *i.e.*, the taking of property from the person or presence of another. Ill. Rev. Stat. 1981, ch. 38, pars. 18—1, 18—2. Neither offense is a lesser-included offense of the other. See, *e.g.*, *People v. White*, 311 Ill. App. 3d 374, 386-87 (2000); *Pearson*, 331 Ill. App. 3d at 322-23.

Therefore, in this case, where the State brought separate charges, each of which would support a separate conviction and was not a lesser-included offense of the other, petitioner's convictions for armed robbery and armed violence were proper and must stand.

For the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

GREIMAN and THEIS, JJ., concur.