Rule 23 order filed
July 19, 2006;
Motion to publish granted
August 24, 2006.

NO. 5-05-0303

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| *In re* COMMITMENT OF | ) Appeal from the Circuit Court of |
| | ) Madison County. |
| LOUIS GENE PHILLIPS | ) |
| | ) No. 99-MR-609 |
| (The People of the State of Illinois, Petitioner- | ) |
| Appellee, v. Louis Gene Phillips, Respondent- | ) Honorable James Hackett, |
| Appellant). | ) Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the opinion of the court:

Louis Gene Phillips appeals from the trial court's April 20, 2005, order summarily dismissing three pending motions that sought a discharge, in various forms of relief, from his commitment as a sexually violent person pursuant to the Sexually Violent Persons Commitment Act (Sexually Violent Persons Act) (725 ILCS 207/1 *et seq.* (West 2002)). We affirm.

This appeal is not the direct appeal from the jury's February 7, 2001, finding that he is a sexually violent person. That appeal has already been heard and decided by this court. On October 29, 2002, in an order pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23), we affirmed the jury's finding and Phillips' commitment to the Department of Human Services for control, custody, and treatment. *In re Commitment of Phillips*, 335 Ill. App. 3d 1224, 836 N.E.2d 950 (2002) (unpublished order under Rule 23).

Phillips' convictions for sexual abuse and assault began many years ago. Complete details are missing from the record, but we know that the attacks occurred in both Oregon and Illinois and involved his two daughters. Phillips served some time in prison and also received probation relative to one or more of those charges.

1

Thereafter, on March 21, 1994, Phillips pled guilty to aggravated criminal sexual assault for the digital penetration of his granddaughter's vagina, for which he received an eight-year prison sentence. He served four years in prison on that conviction and was thereafter given a mandatory supervised release on July 30, 1997. There were certain rules and restrictions associated with this release, including the requirements that Phillips have no contact with children, drink no alcohol, and complete a sex-offender treatment program.

On May 3, 1999, a host-site visit was conducted by the Community Services Division of the Department of Corrections. The agent found Phillips intoxicated in this home and also found that Phillips was babysitting two six-year-old girls–one of whom was his granddaughter. The following day, Phillips' sex-offender treatment therapist discharged him from treatment. Phillips was then notified that he had violated all three of the above-specified conditions of his mandatory supervised release. Phillips returned to prison.

Phillips was scheduled to be released from prison on December 16, 1999. Two days prior to the scheduled discharge, the State filed a petition seeking to commit Phillips pursuant to the Sexually Violent Persons Act. In this petition, the State indicated that Phillips had been diagnosed with various mental disorders–pedophilia, alcohol dependency, and antisocial personality disorder. As indicated earlier in this opinion, a jury found that Phillips was a sexually violent person, and the court entered its order directing his treatment in a secure setting. We affirmed that judgment and the treatment order.

During the next three-plus years, Phillips filed numerous petitions and motions with the court–both *pro se* and with appointed counsel. Specifically, Phillips filed an October 8, 2002, motion asking the trial court to dismiss his disposition, grant him a new trial, or reconsider earlier court orders. On January 13, 2003, Phillips filed the same type of motion again, with additional or new authority. On July 17, 2003, Phillips filed a motion asking the court to declare the Sexually Violent Persons Act to be unconstitutional as applied to him.

2

From the record, it appears that the three motions were denied. Phillips also was reevaluated at 6, 18, and 30 months after his commitment, and he filed two petitions for a conditional release–on July 12, 2002 (denied on February 11, 2004), and on March 16, 2005 (apparently still pending).

Phillips filed three additional motions, which are the subject matter of this appeal.

The first motion was filed on November 25, 2003, and was labeled "Respondent's Motion and Memorandum to Vacate Commitment as Unconstitutional in Violation of the Americans with Disabilities Act." In this motion, Phillips urged the court to vacate his commitment as unconstitutional in violation of the Americans with Disabilities Act of 1990 (Americans with Disabilities Act) (42 U.S.C. §12101 *et seq.* (2000)). Specifically, Phillips complained about the adequacy of the treatment he was receiving, arguing that the "treatment" being provided violated his due process rights. Phillips also argued that he did not have access to rehabilitative services. Arguing case law from the State of Washington, Phillips contended that the State of Illinois was required to prove that he was guilty of a "recent overt act" in order to establish that he is a sexually violent person. Finally, he argues that his commitment violates the Americans with Disabilities Act in that he suffers from a disability–the mental disorder established to commit him as a sexually violent person–and that he is being discriminated against because he is not receiving treatment in an "appropriate community-based treatment program."

The second motion at issue in this appeal was filed on March 8, 2004. This motion was labeled "Respondent's Combined Motion to Dismiss the Civil Commitment Order Based Upon the Lack of a 'Recent Overt Act' Prior to His Commitment, and Based on the Illinois Decision in People v. Gilford," and was absolutely identical to a motion filed earlier on September 8, 2003, upon which the trial court apparently never ruled. This motion also argues that Illinois should follow the law of the State of Washington relative to a requirement

3

of a "recent overt act." Phillips interpreted and argued the case of *People v. Gilford*, 336 Ill. App. 3d 722, 784 N.E.2d 841 (2002), *vacated*, 206 Ill. 2d 630, 799 N.E.2d 679 (2003), as requiring a separate finding that he lacked control relative to a substantial probability of reoffending. Phillips argues that this separate finding was lacking in this case.

The third motion was filed on July 7, 2004, and was entitled "Motion for Relief from Judgment." The specific wording of this motion provides that Phillips was seeking relief from his judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2002)). The only issue raised in this motion appears to relate to the expert witness's testimony at his commitment trial. Specifically, Phillips objects to the actuarial-risk-assessment testimony offered by the State's experts. Phillips argues that the trial court's determination that the evidence and related testimony met the *Frye* test (*Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923)) was incorrect. This motion lists no new facts discovered relative and subsequent to his commitment hearing.

At a motions hearing held in the trial court on August 19, 2004, the court mentioned the pending motions. To that point, the State had not filed any written response to any of the three motions. We also found no argument contrary to the motions in the transcripts included in the record on appeal. At this motion hearing, Judge Hackett brought the motions to the attention of the attorneys. He referenced an earlier hearing in 2004, but the transcript, if any, is absent from the record. The court represented that at this earlier hearing, the parties and the court had discussed motions one and two, which were then the only two pending. The parties were in agreement at that time that no further evidence was going to be submitted, and the trial court was supposed to go ahead and rule on those motions. With respect to the third motion, the State was granted 21 days to respond, after which Phillips would be granted an additional 7 days to reply. The court suggested that a hearing be scheduled–presumably regarding the third motion only, although the judge's comments do not specify whether it

4

would relate to one motion or all of them. The State's counsel asked Phillips' counsel if he wanted to argue the motion(s) or "just let the Judge rule," to which Phillips' counsel stated, "I think we can do it based on the briefs." Any opportunity to argue the motions was therefore waived by both sides.

Thereafter, the State filed no response to the third motion. The trial court ultimately ruled solely on the basis of the arguments raised by Phillips in his motions. On April 18, 2005, the court summarily denied all three of these motions. From this order, Phillips timely appealed.

Only the third motion references section 2-1401 of the Code of Civil Procedure. On appeal, the parties urge us to consider all three motions as being filed pursuant to this procedural section.

The State urges us to do so because it claims that all three motions would have been filed outside the statutory limitations period. Section 2-1401(c) states, "[T]he petition must be filed not later than 2 years after the entry of the order or judgment." 735 ILCS 5/2-1401(c) (West 2002). The section provides an exception to the two-year period if the person seeking relief is found to have been under a legal disability or duress or if the ground for relief was fraudulently concealed.

Because the date of the judgment at issue was February 7, 2001, the time frame under which Phillips was operating expired on or about February 7, 2003. The three motions were filed on November 25, 2003, March 8, 2004, and July 7, 2004—all well past the allowable statutory time frame. However, after examining the record, we conclude that it is clear that the State raised no defense to any of the three motions, because the State neglected to file a response to any of them. Furthermore, we were unable to find any oral reference to the limitations period in the transcripts of the arguments at the motion hearings. By raising this issue for the first time on appeal, the State would be prohibiting Phillips from amending his

motions to allege that the limitations period should not apply to him due to some legal disability, duress, or an argument fraudulently concealed from him. See *People v. Pinkonsly*, 207 Ill. 2d 555, 563, 802 N.E.2d 236, 242 (2003) (finding that the State waived the limitations defense by failing to raise it until the appeal in a postconviction hearing act case with a similar limitations period and a statutory exception for a late filing). By this statement we are not implying that any such grounds exist, but we are merely noting that section 2-1401(c) of the Code of Civil Procedure contemplates exceptions to the limitations period for these specific situations and that had the State raised the defense in the trial court, Phillips would have at least had an opportunity to reply to the defense.

Phillips also asks us to consider his first two motions as section 2-1401 petitions. We decline to do so for several reasons. First of all, there is nothing in the record or in the court's order indicating that the trial court considered the first two motions in that way. The first two motions contain no reference to section 2-1401 in the body of the motions or in the letters to the court that accompanied the motions. Furthermore, although we were informed at oral argument that Phillips himself drafted the motions, his court-appointed attorney signed off on all three motions. If the attorney intended the first two motions to be considered as section 2-1401 petitions, then the attorney could have made that minor change in the motions' titles. The third motion was labeled as a section 2-1401 petition, which further supports our conclusion that only the third motion was intended to be filed and considered as a section 2-1401 petition. While the appellate court has the power on appeal to recharacterize motions as section 2-1401 petitions (see *People v. Rodriguez*, 355 Ill. App. 3d 290, 292, 823 N.E.2d 224, 227 (2005)), for the reasons given we decline to exercise our power to do so with these two motions.

Following a direct appeal of a court's judgment, there are four vehicles by which an individual can access the court system and seek collateral relief: a postconviction petition, a

6

*mandamus* complaint, a *habeas corpus* complaint, and a section 2-1401 petition. Before turning to the precise issues raised in these first two motions, we address the other three legal vehicles potentially available to Phillips.

In Illinois, Phillips is not allowed to file a postconviction petition from a determination that he is a sexually violent person. There are certain aspects of the proceedings pursuant to the Sexually Violent Persons Act that extend criminal procedural protections to the individual who is the subject of the petition, such as the right to be present and represented by counsel (725 ILCS 207/25(c)(1) (West 2002)), the right to remain silent (725 ILCS 207/25(c)(2) (West 2002)), and the right to cross-examine witnesses (725 ILCS 207/25(c)(3) (West 2002)). However, Sexually Violent Persons Act commitment proceedings are thoroughly rooted in civil law. 725 ILCS 207/20 (West 2002); see also *In re Detention of Samuelson*, 189 Ill. 2d 548, 558-59, 727 N.E.2d 228, 234-35 (2000). The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2002)) provides the means by which criminal defendants obtain relief when their constitutional rights have been violated. Specifically, section 122-1(a)(1) (725 ILCS 5/122-1(a)(1) (West 2002)) provides that the persons entitled to relief are those "imprisoned in the penitentiary." In this case, and in all sexually violent persons cases, the individual is in civil custody. Therefore, Phillips lacks standing to file a postconviction petition.

The second form of collateral relief–*mandamus* relief–is used to compel the performance of a nondiscretionary duty. *People ex rel. Foreman v. Nash*, 118 Ill. 2d 90, 96, 514 N.E.2d 180, 183 (1987). A writ of *mandamus* cannot be used to review orders or judgments of courts for error, and it cannot be utilized to alter a judge's actions when that judge had jurisdiction to act. *Foreman*, 118 Ill. 2d at 96-97, 514 N.E.2d at 183. The allegations of his first motion do not fit this definition, because Phillips sought to have his commitment vacated as unconstitutional on the bases that the commitment was contrary to

7

the Americans with Disabilities Act and that his treatment for his sexually violent tendencies was inadequate. Phillips also argued that he could not have been found to have been a sexually violent person. All the arguments of his first motion could have been raised on direct appeal and, further, are not of a type seeking to compel the performance of a nondiscretionary duty. In his second motion, Phillips again attacked the finding that he was a sexually violent person, on a couple of different grounds. As with the first motion, all these arguments would properly have been the subject of his direct appeal and do not seek to compel the performance of a nondiscretionary duty. Therefore, neither motion is seeking *mandamus* relief.

Phillips' first two motions also fail as *habeas corpus* complaints. A *habeas corpus* complaint seeks to secure a prisoner's release if the trial court lacked either personal jurisdiction or subject matter jurisdiction or if some event after the conviction necessitates the prisoner's immediate release. *People v. Gosier*, 205 Ill. 2d 198, 205, 792 N.E.2d 1266, 1270 (2001). Phillips does not allege a jurisdictional defect in either motion. Additionally, there are no allegations relative to postjudgment events that would qualify as a typical *habeas corpus* complaint. Phillips cites no authority in support of the theory that his perceived deficiencies in postjudgment treatment warrant *habeas corpus* relief.

The issues raised by Phillips in his first two motions are the type that must be raised on direct appeal. That process has already concluded. We also do not believe that Phillips intended to file the first two motions as section 2-1401 petitions, and we refuse to recharacterize them as such. Because we conclude that there are no alternate grounds for collateral relief relative to the first two motions, we find no basis to conclude that the trial court's summary dismissal of those two motions was improper.

We will now address the third motion, labeled as a section 2-1401 motion. On appeal from the dismissal of a petition filed pursuant to section 2-1401, our review is *de novo*.

8

*People v. Bramlett*, 347 Ill. App. 3d 468, 473, 806 N.E.2d 1251, 1255 (2004). A section 2-1401 petition serves as a means by which the petitioner can seek to correct errors of fact that occurred during the trial. *People v. Haynes*, 192 Ill. 2d 437, 461, 737 N.E.2d 169, 182 (2000). The purpose of that review "is not to relitigate matters that were or could have been raised on direct appeal, but rather to resolve arguments that new or additional matters, if they had been known at the time of trial, could have prevented [the] finding [made]." *People v. Burrows*, 172 Ill. 2d 169, 187, 665 N.E.2d 1319, 1327 (1996); *Haynes*, 192 Ill. 2d at 461, 737 N.E.2d at 182.

The issue raised by Phillips in this motion relates to expert testimony about his likelihood of reoffending. This testimony was offered as a result of several evaluations statutorily required and petitioner-demanded. Although unclear from the wording of the motion itself, Phillips' appellate counsel claims that Phillips challenges seven evaluations dating from September 9, 1999, through February 9, 2004. Specifically, Phillips argues that the State's experts inappropriately provided conclusions relative to his likelihood of reoffending without providing specific actuarial test scores satisfying a particular likelihood of reoffending. Phillips cites to a May 7, 2004, trial court order in which, he claims, the court ruled that actuarial-risk-assessment tests can properly be admitted into evidence if "offered appropriately." We find no mention of this order in the record of this particular case, and from the incomplete record, we do not know if the order was meant to apply to all such pending cases in Madison County. From the portion of the order quoted, we do not know if the intent of the order was prospective application or retroactive application−or if the order altered existing practice. Phillips contends that the State's experts used actuarial evidence against him that only revealed that he was at a moderate risk of reoffending.

The Sexually Violent Persons Act mandates that a person committed pursuant to the act have a mental disorder that "creates a substantial probability that he or she will engage in

9

acts of sexual violence." 725 ILCS 207/15(b)(5) (West 2002). The appellate court has determined that this statutory section is not unconstitutionally vague because "substantially probable" means "much more likely than not." *In re Detention of Bailey*, 317 Ill. App. 3d 1072, 1086, 740 N.E.2d 1146, 1156-57 (2000). On appeal, Phillips asks this court to remand this case to the trial court for an actual determination that he is at risk of reoffending in keeping with the standards outlined in *In re Detention of Bailey*. This argument on appeal is somewhat different from the argument expressed in the original section 2-1401 petition, which sought a reversal because of actuarial evidence introduced at the trial.

We turn to the transcript of the expert testimony during his trial. Dr. Jackie Buck, a clinical psychologist, testified that in her professional opinion there was a substantial probability that Phillips "would commit additional acts of sexual violence" if Phillips was released into the community. She defined "substantial probability" as "more likely than not" and "very highly likely." When pressed, Dr. Buck referenced Phillips' scores on the Minnesota Sex Offender Screening test, and she concluded that in both a clinical sense and a statistical sense, Phillips presented a "very high risk" of reoffending if released into the community.

Turning back to the text of Phillips' section 2-1401 petition, we conclude that the petition alleges no new discoveries of fact or law subsequent to the jury's determination at the conclusion of his trial. The only "new" allegation is this May 7, 2004, alleged order that apparently affirms the usage of actuarial scores if either side offered that evidence. However, this allegation is not new in the precise context of Phillips' case, because the actuarial testimony was given by Dr. Buck on his attorney's cross-examination. The May 7, 2004, order altered nothing about the evidence heard by the jury.

Because Phillips' section 2-1401 petition raised no new facts, raising only a legal argument without foundation in light of the actuarial evidence already accepted by the court

10

during the trial, his petition was not properly filed pursuant to section 2-1401 of the Code of Civil Procedure.

At issue then is whether or not the trial court's summary dismissal of the section 2-1401 petition was appropriate. Currently, there is a split of authority in the Illinois Appellate Court on the question of whether or not a trial court can summarily dismiss such a petition. The Illinois Supreme Court recently granted a petition for leave to appeal on this precise issue, in which the court is being asked to determine if a summary dismissal is appropriate and, if not, whether the resulting error is subject to a harmless error analysis. *People v. Vincent*, No. 1-04-1802 (2005) (unpublished order under Rule 23), *appeal allowed*, 217 Ill. 2d 623, 844 N.E.2d 971 (2006). Some Illinois courts have concluded that the trial court cannot summarily dismiss a section 2-1401 petition and that those dismissals are always structural error, necessitating a reversal. *People v. Pearson*, 345 Ill. App. 3d 191, 802 N.E.2d 386 (2d Dist. 2003), *aff'd on other grounds*, 216 Ill. 2d 58, 833 N.E.2d 827 (2005); *People v. Edwards*, 355 Ill. App. 3d 1091, 825 N.E.2d 329 (3d Dist. 2005). Some courts have concluded that the trial court cannot summarily dismiss a section 2-1401 petition but that a harmless error analysis can be conducted. *People v. Vincent*, No. 1-04-1802 (1st Dist., 1st Div. 2005) (unpublished order under Rule 23), *appeal allowed*, 217 Ill. 2d 623, 844 N.E.2d 971 (2006); *People v. Taylor*, 349 Ill. App. 3d 718, 812 N.E.2d 581 (1st Dist., 4th Div. 2004); *People v. Dyches*, 355 Ill. App. 3d 225, 824 N.E.2d 636 (1st Dist., 6th Div. 2005). Other courts have concluded that a summary dismissal is permissible as a means by which the court exercises its administrative power to control its own docket. *People v. Bramlett*, 347 Ill. App. 3d 468, 806 N.E.2d 1251 (4th Dist. 2004); *People v. Schrader*, 353 Ill. App. 3d 684, 820 N.E.2d 489 (1st Dist., 3d Div. 2004).

The Fifth District has not yet weighed in specifically on the *sua sponte* dismissal of a section 2-1401 petition. However, we have found in a similar situation that a summary

11

dismissal was appropriate. In *People v. Tiller*, after reviewing the division in the appellate court, this court agreed with the reasoning that a circuit court has the authority to examine a *habeas corpus* complaint and to *sua sponte* strike the complaint if the complaint is found to be frivolous and meritless. *People v. Tiller*, 361 Ill. App. 3d 803, 805, 838 N.E.2d 969, 971 (2005) (citing *Mason v. Snyder*, 332 Ill. App. 3d 834, 842, 774 N.E.2d 457, 463-64 (2002) (concluding that the summary dismissal of a *mandamus* complaint was appropriate)). We commented upon "the circuit court's inherent power to protect itself from frivolous and vexatious litigation." *Tiller*, 361 Ill. App. 3d at 805, 838 N.E.2d at 971-72. The specific allegations of the complaint failed to set forth a meritorious *habeas corpus* complaint, and the court concluded that a dismissal without a hearing was proper. *Tiller*, 361 Ill. App. 3d at 806, 838 N.E.2d at 972.

In keeping with the court's reasoning in *People v. Tiller*, we conclude that the trial court maintains the authority to determine whether or not a section 2-1401 petition has merit and that, if it is lacking in merit, the court can *sua sponte* dismiss the petition. Although labeled a section 2-1401 petition, Phillips' petition was not properly labeled with that designation, and the trial court's summary dismissal was proper.

For the foregoing reasons, the judgment of the circuit court of Madison County is hereby affirmed.


Affirmed.


WELCH and DONOVAN, JJ., concur.

12

NO. 5-05-0303

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

———————————————————————————————————————————————

| | |
|---|---|
| *In re* COMMITMENT OF | ) Appeal from the Circuit Court of<br>) Madison County. |
| LOUIS GENE PHILLIPS | )<br>) No. 99-MR-609 |
| (The People of the State of Illinois, Petitioner-<br>Appellee, v. Louis Gene Phillips, Respondent-<br>Appellant). | )<br>) Honorable James Hackett,<br>) Judge, presiding. |

———————————————————————————————————————————————

**Rule 23 Order Filed:**      July 19, 2006
**Motion to Publish Granted:**  August 24, 2006
**Opinion Filed**:          August 24, 2006

———————————————————————————————————————————————

**Justices**:        Honorable Melissa A. Chapman, J.

               Honorable Thomas M. Welch, J., and
               Honorable James K. Donovan, J.,
               Concur

———————————————————————————————————————————————

**Attorneys**     John M Delaney, Jr., 346 West St. Louis Avenue, P.O. Box 268, East Alton, IL 62024;
**for**             Curtis L. Blood, 1602 Vandalia, Collinsville, IL 62234-4459
**Appellant**

———————————————————————————————————————————————

**Attorneys**     Lisa Madigan, Attorney General of Illinois, Gary Feinerman, Solicitor General, Linda
**for**             D. Woloshin, Leah C. Myers, Assistant Attorneys General, 100 West Randolph
**Appellee**      Street, 12th Floor, Chicago, IL 60601

———————————————————————————————————————————————